**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF IDAHO**

| | |
|---|---|
| GENERAL FIRE & CASUALTY CO. and GF&C HOLDING CO., <br><br> Plaintiffs, <br><br> v. <br><br> GUY CARPENTER & CO., INC., <br><br> Defendant. | Case No. CV 05-251-S-LMB <br><br> **MEMORANDUM DECISION AND ORDER** |

Currently pending before the Court is Guy Carpenter's Motion for Summary Judgment Against GF&C's Claims (Docket No. 37). Having carefully reviewed the record, considered oral arguments, and otherwise being fully advised, the Court enters the following Memorandum Decision and Order.

**I.**

**BACKGROUND**

Plaintiff General Fire & Casualty Co. ("General Fire" or "GenFire") is an Idaho insurance company, wholly owned by Plaintiff GF&C (collectively "Plaintiffs"), an Idaho holding company. *Graham Decl.*, ¶¶ 2–3 (Docket No. 32, Att. 3). Defendant Guy Carpenter & Co., Inc. ("Defendant" or "Guy Carpenter") is a reinsurance intermediary incorporated in Delaware with offices in Washington, among other places. *Id.* at ¶ 4.

Reinsurance is "insurance for insurance companies." An insurance company, known in the industry as a primary or ceding company, cedes portions of its liability on risks to another insurance company, known as a reinsurer, to reduce the amount of possible loss incurred by the

**MEMORANDUM DECISION & ORDER -1-**

ceding company. *Plaintiffs' Statement of Facts*, ¶ 3 (Docket No. 36, Att. 1). Reinsurance is used because state statutes require insurers to maintain a certain ratio of policyholder surplus in relation to the amount of risk assumed by the insurer. *Graham Decl.*, ¶ 6 (Docket No. 32, Att. 3).

Reinsurance intermediaries like Guy Carpenter act as the middlemen between ceding insurers and reinsurers. *Id*. at ¶ 7. "A reinsurance intermediary assists the cedant to draw up a reinsurance program and then goes to the reinsurer 'market' to propose the cedant's terms, negotiate with reinsurers, and finalize the terms of the reinsurance agreements." *Id*.

General Fire commenced writing property/casualty insurance policies in January 1999. *Crandall Affidavit*, ¶ 5 (Docket No. 36, Att. 2). Guy Carpenter acted as the reinsurance intermediary for General Fire from 1999 until May 2005. *Graham Decl.*, ¶ 8 (Docket No. 32, Att. 3). GF&C alleges that Guy Carpenter provides services for it as well. *GF&C's Response to Motion for Summary Judgment Against GF&C's Claims*, p. 3 (Docket No. 42).

Each year from 1999 to 2003, Guy Carpenter designed reinsurance programs that provided excess of loss ("XOL") reinsurance for General Fire policyholder claims in excess of a $1 million working layer of reinsurance (where most of General Fire's claims were expected to occur). *Crandall Affidavit*, ¶ 9 (Docket No. 36, Att. 2). Guy Carpenter recommended that General Fire purchase XOL reinsurance for casualty losses in blocks that provide coverage up to an aggregate limit of $4 million in any one year, with one or more "reinstatements" depending on the year. *Id*.

Each of the casualty XOL reinsurance contracts prepared by Guy Carpenter contains a reinstatement clause that provides for reinstatement of the excess coverage in return for payment of additional premium to the reinsurers. *Id*. at ¶ 10. General Fire understood that it would be

required to pay a reinstatement premium to reinstate each successive layer of XOL coverage. *Id*. However, allegedly, there was a misunderstanding as to the nature and timing of the reinstatement premium obligations. *Id*. Based on Guy Carpenter's Loss Scenarios and general discussions, General Fire allegedly understood that it could *elect* to reinstate the XOL reinsurance coverage in exchange for payment of the reinstatement premium *if and when it determined that it needed the additional reinsurance coverage*. *Id*. at ¶ 11. However, in late 2003, when General Fire contacted Guy Carpenter to ask advice on whether it could exercise its right to reinstate the limits of coverage any time as the losses developed or instead must do so prior to the end of the 2003 accident year, it learned that reinstatement and reinstatement premiums were automatic, not optional elections. *Id*. at ¶ 15; *Dec. 30, 2003, E-mail (Bates Nos. GFC06177–79)*, *Ex. 7 to Crandall Affidavit*, pp. 1–3 (Docket No. 36, Att. 9). Specifically, Guy Carpenter advised General Fire as follows:

> Reinstatement is not optional – it is automatic and there is an accompanying charge for it. The reinstatement premium is due when the loss is paid and is usually netted against the paid loss amount . . . .
>             . . .
> One way to illustrate reinstatement is you start the year with a bucket filled with water. You dip into it (pay a loss), and the reinsurer immediately fills it back up so you still have a full bucket to deal with the next loss (simultaneously you pay him additional premium for the extra water he topped you off with).

*Crandall Affidavit*, ¶ 16 (Docket No. 36, Att. 2); *May 28, 2004, E-mail (Bates Nos. GFC10404–09)*, *Ex. 7 to Crandall Affidavit*, pp. 4–9 (Docket No. 36, Att. 9). This advice was accompanied by specific numerical examples showing, allegedly for the first time, that for every dollar paid to General Fire by its reinsurers to cover a loss under the initial 4x1 layer of coverage, the reinsurers would offset or deduct from that payment the amount of premium

**MEMORANDUM DECISION & ORDER -3-**

required to reinstate the coverage whether or not General Fire needed or wanted the reinstatement at that time.  *Crandall Affidavit*, ¶ 16 (Docket No. 36, Att. 2).

After receiving this advice, General Fire asked its auditors to consider the effect of Guy Carpenter's interpretation of the reinstatement provision of the 4x1 XOL reinsurance contracts.  *Id.* at ¶ 17.  The auditors concluded that the relevant contract language was ambiguous.  *Id*.  Nonetheless, they required General Fire to accrue for reinstatement premiums in the Company's 2003 financial statements, allegedly resulting in an approximately $1.8 million reduction in earnings due to increased reinsurance expenses for 2003.  *Id*.

## II.

### PROCEDURAL HISTORY

On November 30, 2004, General Fire filed, in state court, its Complaint against Guy Carpenter, bringing the following counts: negligence, breach of fiduciary duty, breach of contract, and misrepresentation.  *Complaint*, pp. 4–13 (Docket No. 1, Att. 1).

On June 24, 2005, Guy Carpenter removed the action to the United States District Court.  *Notice of Removal* (Docket No. 1).

On August 10, 2005, General Fire filed a first Amended Complaint (Docket No. 11), adding the following counts: constructive fraud (count five) and unjust enrichment and disgorgement (count six).  *First Amended Complaint*, pp. 10–12 (Docket No. 11).

On August 31, 2005, the parties filed a Stipulated Motion for Leave to Amend and to Extend Time to File Answer or Responsive Motion (Docket No. 12), which the Court granted, *Order Granting Stipulated Motion for Leave to Amend and to Extend Time to File Answer or Responsive Motion* (Docket No. 13).  Therefore, on September 14, 2005, General Fire filed its Second Amended Complaint and Demand for Jury Trial (Docket No. 14), in which GF&C was

included as a plaintiff and which listed the counts as follows: negligence (count one); negligent misrepresentation (count two); breach of fiduciary duty (count three); breach of contract (count four); misrepresentation (count five); constructive fraud (count six); and forfeiture, disgorgement, and/or constructive trust (count seven).[1]

On July 18, 2006, the Court heard oral argument on the currently-pending motion, as well as on other motions. *Minute Entry* (Docket No. 56). Following the hearing, the Court dismissed the negligent misrepresentation claim and granted GF&C's Rule 56(f) motion. *Order and Notice of Continued Hearing*, p. 10 (Docket No. 58). Accordingly, the hearing was continued until October 30, 2006, to permit "additional discovery and briefing" in the interim. *Id*. That has now happened, and the case has been submitted for the Court's decision.

### III.

### MOTION FOR SUMMARY JUDGMENT AGAINST GF&C'S CLAIMS

On May 26, 2006, Guy Carpenter filed its Motion for Summary Judgment Against GF&C's Claims (Docket No. 37), arguing (1) that Idaho's "economic-loss rule" bars GF&C's recovery in its negligence claims because it seeks purely economic damages and because neither of the two limited exceptions to the rule apply and (2) that GF&C's other claims must fail because Guy Carpenter never agreed to perform any services or assume any duties at all in regard to GF&C. *Guy Carpenter's Memorandum in Support*, pp. 5–7 (Docket No. 37, Att. 1). GF&C opposes the motion. *GF&C's Memorandum in Opposition* (Docket No. 42).

---

[1] Plaintiffs filed a Third Amended Complaint and Demand for Jury Trial (Docket No. 52) on July 20, 2006, for the purpose of articulating that the amount in controversy in this action exceeds $75,000, such that the exercise of diversity jurisdiction is appropriate. The Third Amended Complaint contains the same counts as the Second Amended Complaint.

**MEMORANDUM DECISION & ORDER -5-**

A.     **Summary Judgment Standard**

Motions for summary judgment are governed by Federal Rule of Civil Procedure 56, which provides, in pertinent part, that judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

1.     **Genuine Issue of Material Fact**

According to Rule 56, an issue must be both "material" and "genuine" to preclude entry of summary judgment. An issue is "material" if it affects the outcome of the litigation. *Hahn v. Sargent*, 523 F.2d 461, 464 (1st Cir. 1975). That is, a material fact is

> one that is relevant to an element of a claim or defense and whose existence might affect the outcome of the suit. The materiality of a fact is thus determined by the substantive law governing the claim or defense. Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment.

*T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986)).

On the other hand, an issue is "genuine" when there is "sufficient evidence supporting the claimed factual dispute . . . to require a jury or judge to resolve the parties' differing versions of the truth at trial." *Hahn*, 523 F.2d at 464 (quoting *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968)). Because factual disputes are to be resolved at trial, in ruling on summary judgment motions, the Court does not resolve conflicting evidence with respect to disputed material facts, nor does it make credibility determinations. *T.W. Elec. Serv., Inc.*, 809 F.2d at 630. Moreover, all inferences must be drawn in the light most favorable to the nonmoving party. *Id.* at 631.

### 2. Moving and Nonmoving Parties' Burdens

The initial burden is on the moving party to show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *See Steckl v. Motorola, Inc.*, 703 F.2d 392, 393 (9th Cir. 1983); Fed. R. Civ. P. 56(c). If the moving party meets its initial burden, the nonmoving party must "produce 'specific facts showing that there remains a genuine factual issue for trial' and evidence 'significantly probative' as to any [material] fact claimed to be disputed." *Steckl*, 703 F.2d at 393 (quoting *Ruffin v. County of L.A.*, 607 F.2d 1276, 1280 (9th Cir. 1979)). In addition, the nonmoving party must make a showing sufficient to establish the existence of an element that is essential to the party's case and upon which the party will bear the burden of proof at trial; otherwise, summary judgment is required. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). If the nonmoving party fails to make such a showing on any essential element of the nonmoving party's case, "there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 323. *See also* Fed. R. Civ. P. 56(e).[2] So, to withstand a motion for summary judgment, a nonmoving party

> (1) must make a showing sufficient to establish a genuine issue of fact with respect to any element for which it bears the burden of proof; (2) must show that there is an issue that may reasonably be resolved in favor of either party; and (3) must come forward with more persuasive evidence

---

[2] Rule 56(e) states that, in responding to a motion for summary judgment,
> an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

Fed. R. Civ. P. 56(e).

**MEMORANDUM DECISION & ORDER -7-**

>than would otherwise be necessary when the factual context makes the non-moving party's claim implausible.

*British Motor Car Distribs., Ltd. v. S.F. Auto. Indus. Welfare Fund*, 883 F.2d 371, 374 (9th Cir. 1989) (citation omitted).

In recent years, the Supreme Court, "by clarifying what the non-moving party must do to withstand a motion for summary judgment, has increased the utility of summary judgment." *Cal. Architectural Bldg. Prods., Inc. v. Franciscan Ceramics, Inc.*, 818 F.2d 1466, 1468 (9th Cir. 1987). Therefore, "[n]o longer can it be argued that any disagreement about a material issue of fact precludes the use of summary judgment." *Id*. Nonetheless, "if a rational trier of fact might resolve the issue in favor of the nonmoving party, summary judgment must be denied." *T.W. Elec. Serv., Inc.*, 809 F.2d at 631; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (holding a motion for summary judgment must be denied when the "evidence is such that a reasonable jury could return a verdict for the nonmoving party").

**B.      GF&C's Negligence Claims and Idaho's Economic-Loss Rule**

In Idaho, unless an exception applies, the economic-loss rule prohibits recovery of purely economic losses in a negligence action because there is no duty to prevent economic loss to another. *Blahd v. Richard B. Smith, Inc.*, 141 Idaho 296, 300, 108 P.3d 996, 1000 (2005) (citing *Duffin v. Idaho Crop Improvement Ass'n*, 126 Idaho 1002, 1007, 895 P.2d 1195, 1200 (1995). In this case, as to GF&C's negligence claims, it is undisputed that GF&C seeks recovery purely for economic losses. *Guy Carpenter's Memorandum in Support*, p. 9 (Docket No. 37, Att. 1) (citing *Second Amended Complaint*, ¶ 32 (Docket No. 14) and contending that "GF&C alleges purely economic damages only," a contention GF&C has not denied). Therefore, GF&C's negligence claims are barred unless an exception to the economic-loss rule applies.

**MEMORANDUM DECISION & ORDER -8-**

There are two exceptions to the economic-loss rule: the existence of a special relationship between the parties and unique circumstances requiring a reallocation of the risk. *Millenkamp v. Davisco Foods Int'l, Inc.*, 391 F. Supp. 2d 872, 878 (D. Idaho 2005).

### 1.     Special Relationship

A "special relationship" refers to situations in which the relationship between the parties is such that it would be equitable to impose a duty to prevent economic loss to another. *Id*. It is an "extremely limited group of cases where the law of negligence extends its protections to a party's economic interest." *Id*. (quoting *Blahd*, 141 Idaho at 301, 108 P.3d at 1001 (quoting *Duffin*, 126 Idaho at 1008, 895 P.2d at 1201)). The Idaho Supreme Court has recognized two situations in which the "special relationship" exception applies: (1) where an entity holds itself out to the public as having expertise regarding a specialized function and knowingly induces reliance on its performance of that function and (2) where a professional or quasi-professional performs personal services. *Millenkamp*, 391 F. Supp. 2d at 878–79.

#### a.     Holding Out to Public

As to whether Guy Carpenter held itself out to the public as having expertise regarding drafting reinsurance agreements and knowingly induced reliance by both General Fire *and* GF&C on its performance of that function, Guy Carpenter argues that its only relationship was with General Fire as General Fire's reinsurance intermediary, not with GF&C, the holding company, and that GF&C cannot present any evidence that Guy Carpenter "knowingly induced" *GF&C* to rely on any action or representation. *Guy Carpenter's Memorandum in Support*, pp. 13, 17 (Docket No. 37, Att. 1).

Guy Carpenter relies heavily on *Duffin v. Idaho Crop Improvement Ass'n*, 126 Idaho 1002, 895 P.2d 1195 (1995). *See Guy Carpenter's Memorandum in Support*, pp. 16–18 (Docket

**MEMORANDUM DECISION & ORDER -9-**

No. 37, Att. 1).  In *Duffin*, the plaintiff had purchased seed potatoes that had been "certified" to be free of disease by both the Idaho Crop Improvement Association ("ICIA") and by Idaho's Federal-State Inspection Service.  *Id*. at 1005, 895 P.2d at 1198.  The seed, after being planted by the plaintiffs, turned out to be infected with bacterial ring rot.  *Id*.  The Idaho Supreme Court held the ICIA and the plaintiff were in a "special relationship," recognizing that the ICIA had "engaged in a marketing campaign, for the benefit of its members, the very purpose of which is to induce reliance by purchasers on the fact that seed ha[d] been certified."  *Id*. at 1008, 895 P.2d at 1201.  Thus, the Idaho Supreme Court held that the ICIA "occupies a special relationship with those whose reliance it has knowingly induced."  *Id*.

In this case, Guy Carpenter's marketing material states that "[e]ffective reinsurance may add tangible value to an *insurance enterprise*," *Exhibit 1 to Stanger Affidavit*, p. 5 (Docket No. 36, Att. 11).  Based on that and due to GF&C and General Fire's close relationship, a reasonable jury could conclude that Guy Carpenter engaged in a marketing campaign to induce reliance not only by the direct purchasers of the reinsurance, but also by those within an "insurance enterprise."

### b.  Professional Performs Personal Services

As to whether Guy Carpenter provided personal services to GF&C so as to create a special relationship, Guy Carpenter presented the affidavits of several former, high-level employees of GF&C and General Fire, who state that GF&C never had any kind of a relationship with Guy Carpenter.  *Bonneau Declaration*, ¶¶ 2, 5 (Docket No. 37, Att. 5) ("I was employed by General Fire & Casualty Co. from December 2001 until March 2005, including acting as Director of Claims, Vice President of Claims, and Senior Vice President, serving alongside Barbara Anderson and Dan Crandall as a member of General Fire's reinsurance committee.")

**MEMORANDUM DECISION & ORDER -10-**

("GF&C Holding Company had no relationship at all with Guy Carpenter.); *Anderson Declaration*, ¶¶ 2, 5 (Docket No. 37, Att. 6) ("I was employed by General Fire & Casualty Co., including positions as the Chief Financial Officer, Chief Information Officer, Chief Operations Officer, Vice President for Actuarial and Statistics, and Executive Vice President, from General Fire's inception in 1998 until leaving the company in June 2005.") ("GF&C Holding Company had no relationship with Guy Carpenter. Guy Carpenter acted as a reinsurance intermediary only for General Fire. To my knowledge, Guy Carpenter has never performed any services for GF&C."); *Winston Declaration*, ¶¶ 2, 5 (Docket No. 37, Att. 7) ("I was employed by General Fire & Casualty Co. as its Chief Underwriting Officer from General Fire's inception in 1998 until January 2003. Throughout this time, I was closely involved in the development and implementation of General Fire's reinsurance program.") ("Guy Carpenter had no relationship with GF&C Holding Co. Guy Carpenter's client was General Fire only, and Guy Carpenter never performed any services for GF&C to my knowledge.").

On the other hand, GF&C also presented a substantial amount of evidence in support of its contention that Guy Carpenter performed services on its behalf. For example, there is evidence to support the following conclusions:

1) GF&C and General Fire

> at all times understood and believed that Guy Carpenter's services were being provided to and for the benefit of the entire insurance enterprise, including both GF&C and GenFire, and that GF&C could and did reasonably rely on Guy Carpenter's representations and the proper performance of Guy Carpenter's services, including those representations concerning reinstatement premiums and the nature of the alleged Hannover Re treaty that form the basis for this litigation.

*Second Crandall Affidavit*, ¶ 45 (Docket No. 42, Att. 2).

**MEMORANDUM DECISION & ORDER -11-**

2) "At all times after July 1, 2000 until late 2003, the personnel with whom Guy Carpenter dealt in designing and placing GenFire's reinsurance programs each year were employees of GF&C Holding Company, including myself, CFO Barbara Anderson, Chief Underwriting Officer Chad Winston and Claims Vice President Gary Bonneau." *Id*. at ¶ 43; *Exhibit 31 to Second Crandall Affidavit*, pp. 47–55 (Docket No. 42, Att. 5) (containing the "Management and Administrative Services Agreement," which states that General Fire "agrees to employee and retain" GF&C).

3) "Mr. Graham[, Senior Vice President of Guy Carpenter,] specifically linked placement of GenFire's reinsurance business with investment in GF&C to foster growth of GenFire." *Second Crandall Affidavit*, ¶ 32 (Docket No. 42, Att. 2).

4) Guy Carpenter required GF&C's financial statements in order to provide reinsurance to General Fire. *Id*. at ¶ 14 ("Guy Carpenter prepared a reinsurance renewal proposal for GenFire which included information concerning GF&C Holding Company and its capitalization, as well as GF&C's financial statements, because that information was requested by the reinsurers as part of their determination whether to provide reinsurance to GenFire and terms and conditions thereof."); *see Exhibit 11 to Second Crandall Affidavit*, pp. 10–23 (Docket No. 42, Att. 3).

5) In connection with its reinsurance services, Guy Carpenter solicited minority investments in GF&C. *Second Crandall Affidavit*, ¶ 37 (Docket No. 42, Att. 2) ("Mr. Graham introduced us to each of these reinsurers and, on our behalf, solicited a minority investment in GF&C by each of these reinsurers *in connection with a reinsurance placement*.") (emphasis added); *see Exhibit 28 to Second Crandall Affidavit*, pp. 39–42 (Docket No. 42, Att 5).

**MEMORANDUM DECISION & ORDER -12-**

6) "In early 2000, Guy Carpenter retained Reinsurance Solutions International, at Guy Carpenter's own expense, to assess UOC's reinsurance program and other due diligence information about UOC, and provided these results to GF&C *as part of its reinsurance intermediary services*." *Second Crandall Affidavit*, ¶ 27 (Docket No. 42, Att. 2) (emphasis added).

From all of this evidence, for purposes of the pending motion for summary judgment, a rational trier of fact could reasonably conclude that Guy Carpenter provided professional services to GF&C, as well as to General Fire, including services encompassing reinsurance-intermediary services. To conclude otherwise, the Court would have to weigh evidence or determine the credibility of witnesses, which would be inappropriate in addressing a motion for summary judgment. More specifically, from the evidence referenced above on both sides of the factual issue, a rational trier of fact could reasonably conclude that Guy Carpenter solicited and participated in investment transactions for GF&C as part of its rendition of reinsurance-intermediary services and that Guy Carpenter was fully aware of the close relationship between GF&C and General Fire, such that the improper provision of reinsurance-intermediary services would injure both GF&C and General Fire. With such conclusions in mind, it would be equitable to impose a duty on Guy Carpenter to prevent economic loss to GF&C as well as to General Fire; *see Millenkamp*, 391 F. Supp. 2d at 878. Accordingly, a reasonable jury or trier of fact could reasonably conclude that GF&C and Guy Carpenter had a special relationship such that the economic-loss rule does not apply.

      c.    **Special Relationships Conclusion**

GF&C has presented a sufficient amount of evidence from which a reasonable jury or trier of fact could reasonably conclude either that Guy Carpenter worked directly with both

**MEMORANDUM DECISION & ORDER -13-**

General Fire and GF&C, and that it held itself out to insurance *enterprises*, including holding companies like GF&C, as experts in reinsurance intermediary services or that Guy Carpenter provided professional services personally to GF&C as well as to General Fire in conjunction with its reinsurance intermediary services. Thus, there exist genuine issues of material fact as to whether GF&C and Guy Carpenter were in a special relationship such that the economic-loss rule would not apply. Accordingly, the Motion for Summary Judgment Against GF&C's Claims (Docket No. 37) is denied as to the negligence claim.

  **2.**  **Unique Circumstances**

Because there is a genuine issue of material fact as to whether GF&C and Guy Carpenter were in a "special relationship," the Court need not determine whether unique circumstances existed that would require a different allocation of risk between the parties. *See Millenkamp*, 391 F. Supp. 2d at 879.

**C.**  **GF&C's Other Claims**

As to GF&C's other claims, i.e., breach of fiduciary duty (count three); breach of contract (count four); misrepresentation (count five); constructive fraud (count six); and forfeiture, disgorgement, and/or constructive trust (count seven), Guy Carpenter argues that "[t]he lack of *any* relationship between Guy Carpenter and GF&C precludes all of GF&C's claims" particularly because the lack of a relationship precludes the presence of any duty owed by Guy Carpenter to GF&C. *Guy Carpenter's Memorandum in Support*, pp. 21–23 (Docket No. 37, Att. 1).

In regard to a motion for summary judgment, the initial burden is on the moving party to show that there is no genuine issue as to any material fact and that moving party is entitled to judgment as a matter of law. *See Steckl v. Motorola, Inc.*, 703 F.2d 392, 393 (9th Cir. 1983);

MEMORANDUM DECISION & ORDER -14-

Fed. R. Civ. P. 56(c).  Further, pursuant to District of Idaho Local Civil Rule 7.1(b), a motion "must be accompanied by a separate brief . . . containing *all* of the reasons and points and authorities relied upon by the moving party."  Dist. Idaho Loc. Civ. R. 7.1(b)(1).

In moving for summary judgment on GF&C's non-negligence claims, Guy Carpenter relies almost exclusively on its contention that no relationship of any kind existed between Guy Carpenter and GF&C.  However, if genuine issues of material fact exist, or if Guy Carpenter is not entitled to judgment as a matter of law, its motion must be denied in regard to the non-negligence claims.

As discussed above, based on the evidence presented by GF&C in opposing Guy Carpenter's motion on its negligence claim, a reasonable jury or trier of fact could reasonably conclude that Guy Carpenter solicited and participated in investment transactions for the benefit of GF&C as part of its overall rendition of reinsurance-intermediary services, and that Guy Carpenter was fully aware of the close relationship between GF&C and General Fire, to the extent that the improper provision of reinsurance-intermediary services would injure both GF&C and General Fire.  Accordingly, for purposes of summary judgment, a reasonable jury or trier of fact could reasonably conclude that it would be equitable to impose a duty on Guy Carpenter to prevent a loss to GF&C.  Thus, there remain genuine issues of material fact as to whether Guy Carpenter and GF&C had a relationship and whether, because of that relationship, Guy Carpenter owed duties to GF&C.  As such, Guy Carpenter's motion for summary judgment is denied as to GF&C's non-negligence claims.

**D.**     **Conclusion**

There exist genuine issues of material fact as to whether Guy Carpenter and GF&C entered into a special relationship sufficient to be included within an exception to the economic-

**MEMORANDUM DECISION & ORDER -15-**

loss rule. Further, there remain genuine issues of fact as to whether Guy Carpenter and GF&C had a relationship such that Guy Carpenter owed duties to GF&C. Accordingly, Guy Carpenter's Motion for Summary Judgment Against GF&C's Claims (Docket No. 37) is denied.

## IV.

## ORDER

In accordance with the foregoing reasoning, IT IS HEREBY ORDERED that Guy Carpenter's Motion for Summary Judgment Against GF&C's Claims (Docket No. 37) is DENIED.



DATED: **November 7, 2006**.

Larry M. Boyle
United States District Court