# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF IDAHO

| | | |
|---|---|---|
| GENERAL FIRE & CASUALTY CO. and GF&C HOLDING CO., | ) ) ) | |
| Plaintiffs, | ) ) | Case No. CV 05-251-S-LMB |
| v. | ) ) | **ORDER** |
| GUY CARPENTER & CO., INC., | ) ) | |
| Defendant. | ) ) ) | |

Currently pending before the Court are Defendant's Motion for Leave to Amend (Docket No. 76) and Plaintiffs' Superseding Motion to Compel (Docket No. 99).[1]  Having carefully reviewed the record, considered oral arguments, and otherwise being fully advised, the Court enters the following Order.

---

[1] Also pending before the Court are Defendant's Motion for Summary Judgment Against Plaintiffs' Risk-Transfer-Related Claims (Docket No. 77), Defendant's Motion for Summary Judgment Against Plaintiffs' Breach-of-Fiduciary-Duty and Disgorgement Claims (Docket No. 78), Plaintiffs' Motion under Rule 56(f) to Continue Guy Carpenter's Motion for Summary Judgment Against Plaintiffs' Breach-of-Fiduciary-Duty and Disgorgement Claims (Docket No. 92), and Plaintiffs' Motion for Leave to File Sur-Response to Guy Carpenter's Motion for Summary Judgment Against Plaintiffs' Risk-Transfer-Related Claims and Supplemental Statement of Disputed Facts (Docket No. 114).  However, this Order will address only Defendant's Motion for Leave to Amend (Docket No. 76) and Plaintiffs' Superseding Motion to Compel (Docket No. 99).

# I.

## BACKGROUND AND PROCEDURAL HISTORY[2]

Plaintiff General Fire & Casualty Co. ("General Fire") is an Idaho insurance company, wholly owned by Plaintiff GF&C Holding Company ("GF&C") (collectively "Plaintiffs"), an Idaho holding company. *Graham Decl.*, ¶ 2 (Docket No. 32, Att. 3). Defendant Guy Carpenter & Co., Inc. ("Defendant" or "Guy Carpenter") is a reinsurance intermediary or broker incorporated in Delaware with offices in Washington, among other places. *Id.* at ¶¶ 1, 4. Guy Carpenter is wholly-owned by Marsh & McLennan Companies, a Delaware corporation, and publicly-traded company. *Defendant's Corporate Disclosure Statement*, pp. 1-2 (Docket No. 2).

On November 30, 2004, General Fire filed, in state court, its Complaint against Defendant. *Complaint*, pp. 4, 9–12 (Docket No. 1, Att. 1). Defendant removed the action to the District of Idaho on June 24, 2005. *Notice of Removal* (Docket No. 1). General Fire amended the Complaint twice (*see* Docket Nos. 11 and 14) before Guy Carpenter filed a timely Answer with Affirmative Defenses (Docket No. 19).

On November 11, 2005, the Court entered a Scheduling Order (Docket No. 25) and, in accordance with the parties' Stipulated Litigation Plan (Docket No. 24), set a deadline of January 31, 2006 for any motions to amend the pleadings. The Scheduling Order has been amended in several respects, but the deadline for amending pleadings has not changed with one small

---

[2] For additional background, please refer to the Court's Order and Notice of Continued Hearing (Docket No. 58) and Memorandum Decision and Order (Docket No. 70).

exception. The Court issued an Order allowing Plaintiffs leave to amend the Complaint for the limited purpose of specifying that the amount in controversy exceeds $75,000. (Docket No. 56).

Pursuant to Court Order (Docket No. 56), Plaintiffs filed a Third Amended Complaint on July 20, 2006 (Docket No. 52). Defendant responded with a timely Answer and Affirmative Defenses to the Third Amended Complaint (Docket No. 61).

## II.

### DEFENDANT'S MOTION TO AMEND

Guy Carpenter filed the instant Motion for Leave to Amend to add a statute of limitations affirmative defense based on Idaho Code § 5-219(4).[3] *Guy Carpenter's Memorandum in Support of Motion for Leave to Amend*, p. 1 (Docket No. 76-2). Guy Carpenter concurrently filed a Motion for Summary Judgment Against Plaintiffs' Risk-Transfer-Related Claims seeking to apply Idaho's two-year statute of limitations to bar Plaintiffs' claims related to certain risk transfer allegations.

Plaintiffs oppose the Motion for Leave to Amend arguing that the two-year statute of limitations for professional malpractice actions does not apply, thus, amending the Answer to add the defense would be futile. *See Plaintiffs' Response to Guy Carpenter's Motion for Leave to Amend* (Docket No. 90).[4]

---

[3] I.C. § 5-219(4) sets a two-year statute of limitations for professional malpractice, defined as "wrongful acts or omissions in the performance of professional services by any person, firm, association, entity, or corporation licensed to perform such services under the law of the state of Idaho."

[4] At oral argument on February 26, 2007, Plaintiffs withdrew an additional argument that the proposed amendment would cause them prejudice.

ORDER - 3

A.      **Motion for Leave to Amend Standards**

Because Defendant filed its Motion To Amend Answer after the deadline set forth in the

Court's Scheduling Order (Docket No. 25), both Federal Rules of Civil Procedure ("FRCP")

15(a) and 16(b) apply to Defendant's Motion to Amend.  After a district court enters a scheduling

order pursuant to FRCP 16, any motion to amend the pleadings filed after the pleading

amendment deadline is governed by FRCP 16(b).  *Johnson v. Mammoth Recreations, Inc.*, 975

F.2d 604, 607-08 (9th Cir. 1992).  Pursuant to FRCP 16(b), the Court must enter a scheduling

order that, among other things, "limits the time . . . to join other parties and to amend the

pleadings."  FRCP 16(b).  This schedule "shall not be modified except upon a showing of good

cause."  *Id.*

If the moving party meets the FRCP 16(b) "good cause" standard, then the moving party

must demonstrate that the amendment is also appropriate under FRCP 15(a) in order to obtain

leave to amend.  *See Johnson*, 975 F.2d at 608 (citing *Forstmann v. Culp*, 114 F.R.D. 83, 85

(M.D.N.C. 1987); *Financial Holding Corp v. Garnac Grain Co.*, 127 F.R.D. 165, 166 (W.D.

Mo. 1989)).

1.      **FRCP 16(b)**

To modify the scheduling order, Guy Carpenter must establish that, despite diligent

efforts, it could not reasonably conform to the January 31, 2006 amendment deadline.

> Rule 16(b)'s 'good cause' standard primarily considers the
> diligence of the party seeking the amendment.  The district court
> may modify the pretrial schedule 'if it cannot reasonably be met
> despite the diligence of the party seeking the extension.' ...
> Moreover, carelessness is not compatible with a finding of
> diligence and offers no reason for a grant of relief.

*Johnson*, 975 F.2d at 609 (citations omitted).

**ORDER - 4**

Guy Carpenter contends that it lacked a good-faith basis under FRCP 11 to assert the statute of limitations defense until August 9, 2006 when Plaintiffs asserted for the first time that they had incurred damages stemming from the risk transfer allegations prior to two years before filing the risk-transfer-related claims. *Guy Carpenter's Supplemental Brief in Support of Motion for Leave to Amend,* p. 1 (Docket No. 118). Guy Carpenter alleges that "Plaintiffs wrongfully withheld critical facts about their damages until August 2006 . . . ." *Id.* at 15.

Plaintiffs do not address the good cause standard under Rule FRCP 16(b). Instead, Plaintiffs argue that Defendant's motion to amend should be dismissed as untimely, because Defendant should have first sought modification of the Scheduling Order. *Plaintiffs' Supplemental Brief Re Guy Carpenter's Motion for Leave to Amend,* p.3 (Docket No. 117). Plaintiffs state "[w]hen a motion is filed after the deadline set in the scheduling order for such motions, and the moving party does not request a modification of the scheduling order to allow the filing of the motion, the motion is untimely and, on that basis alone, may be denied." *Id.*

Defendant has established good cause for modifying the Scheduling Order. While it is unlikely that Rule 11 would have prohibited Guy Carpenter from asserting the statute of limitations defense prior to August 2006, the Court finds that modifying the scheduling order to allow Defendant to file a motion to amend the pleadings is not unreasonable at this juncture in the proceedings, as a number of deadlines set forth in the initial scheduling order have been extended and the parties are still in the midst of discovery. Furthermore, to address Plaintiffs' argument, the Motion for Leave to Amend itself serves as a request to modify the scheduling order and no additional briefing is required.

## 2.    FRCP 15(a)

Because Guy Carpenter has met the good cause standard under FRCP 16(b), the Court

must consider the requirements of FRCP 15(a) to determine whether Guy Carpenter should be

given leave to amend the pleadings.

FRCP 15(a) provides a liberal policy of amendment.  Pursuant to FRCP 15(a):

> A party may amend its pleading once as a matter of course at any
> time before a responsive pleading is served . . . Otherwise, a party
> may amend the party's pleading only by leave of court or by
> written consent of the adverse party; and leave shall be freely given
> when justice so requires.

FRCP 15(a).  The cases further elaborate on this liberal standard:

> In the absence of any apparent or declared reason- such as undue
> delay, bad faith or dilatory motive on the part of the movant,
> repeated failure to cure deficiencies by amendments previously
> allowed, undue prejudice to the opposing party by virtue of
> allowance of the amendment, futility of amendment, etc.- the leave
> should, as the rules require, be 'freely given.'

*Foman v. Davis*, 371 U.S. 178, 182 (1962).  When considering the four factors listed above, the

Court should make all inferences in favor of granting the motion.  *Griggs v. Pace Am. Group,*

*Inc.*, 170 F.3d 877, 880 (9th Cir. 1999).

There is no evidence in the record suggesting undue delay, bad faith, or repeated

amendments to Defendant's Answer.  Plaintiffs oppose the Motion for Leave to Amend solely on

the basis that the amendment is futile, because the two-year statute of limitations set forth in I.C.

§ 5-219(4) does not apply.  *Plaintiffs' Response to Guy Carpenter's Motion for Leave to Amend*,

p. 3 (Docket No. 90).  Plaintiffs contend that I.C. § 5-219(4) applies only to professionals

licensed by the State of Idaho and Guy Carpenter is not licensed by the State of Idaho.  *Id.*  Guy

Carpenter argues that it is authorized to do business in the State of Idaho and provided

**ORDER - 6**

professional services to General Fire within the meaning of the statute. *Guy Carpenter's Reply in Support of Motion to Amend*, pp. 3-4 (Docket No. 96).

While the amendment will be allowed, the merits of the statute of limitations defense will not be resolved at this time, as it is not obvious that the statute of limitations defense set forth in I.C. § 5-219(4) does not apply to Defendant. "[T]he sufficiency of an amended pleading ordinarily will not be considered on the motion for leave to amend." *Breier v. N.Cal. Bowling Proprietors' Ass'n*, 316 F.2d 787, 790 (9th Cir. 1963). Provided that the amendment is not frivolous on its face, the motion for summary judgment, rather than the motion to amend, is the proper means for addressing the merits of the defense. *United Union of Roofers, Waterproofers, & Allied Trades No. 40 v. Ins. Corp. Of Am.*, 919 F.2d 1398, 1402-03 (9th Cir. 1999). Therefore, Defendant is permitted to amend its Answer to include the statute of limitations defense and the merits of the defense will be addressed in later proceedings.

## III.

## PLAINTIFFS' SUPERSEDING MOTION TO COMPEL

Before ruling on Plaintiffs' initial Motion to Compel (Docket No. 74) and Second Motion to Compel (Docket No. 75), counsel for all parties were directed to personally meet and confer to attempt to resolve the issues. (Docket No. 83.) As a consequence, the parties cooperatively narrowed the focus of their dispute and Plaintiffs filed a Superseding Motion to Compel (Docket No. 99) asking the Court to compel Guy Carpenter to respond fully to Plaintiffs' First Set of Interrogatories, Document Requests, and Requests for Production.

It is in the discretion of the trial court to order a party to produce documents or answer interrogatories. *See Brown Bag Software v. Symantec Corp.*, 960 F.2d 1465, 1469 (9th Cir.

ORDER - 7

1992); *Ah Moo v. A.G. Becker Paribus, Inc.*, 857 F.2d 615, 619 (9th Cir. 1988). As a general rule "parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action.... The information sought need not be admissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1).

The Supreme Court of the United States has indicated that the definition of relevancy, for purposes of discovery, "has been construed broadly to encompass any matter that bears on, or that reasonably could lead to other matters that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 350 (1978). Consistent with the liberal, notice pleading standards, "discovery is not limited to issues raised in the pleadings, for discovery itself is designed to help define and clarify the issues." *Id.*

At the same time, there are limits to what a party may properly seek via discovery. "District courts need not condone the use of discovery to engage in 'fishing expedition[s].'" *Rivera v. NIBCO*, 364 F.3d 1057, 1072 (9th Cir. 2004)(citing *Exxon Corp. v. Crosby-Mississippi Res., Ltd.*, 40 F.3d 1474, 1487 (5th Cir. 1995)). Thus, the courts will not compel discovery that is wholly speculative. *Id.*

In the instant case, the disputed discovery requests fall into three categories: (1) discovery requests relating to contingent commission/steering claims; (2) discovery requests relating to "finite" contracts and risk transfer issues; and (3) discovery requests relating to broker duties and training. In addition, Plaintiffs seek an order compelling Guy Carpenter to make witnesses available and both parties request an award of attorneys fees.

**ORDER - 8**

Each of the disputed discovery requests is addressed below.  Following the rule outlined in *Oppenheimer*, the Court has resolved many of the issues by allowing Plaintiffs discovery on not just the specific allegations set forth in the Third Amended Complaint and Demand for Jury Trial, but also on any matters that could bear on any issue that is or may be involved in this case provided that such information is within Guy Carpenter's custody or control.  Moreover, unless otherwise noted herein or agreed by the parties, the information within Guy Carpenter's custody or control refers to all of Guy Carpenter's offices and is not limited to that information that was or is available in the Seattle, Washington office.

**A.      Discovery Requests Relating to Contingent Commission/Steering Claims**

Plaintiffs argue that Interrogatory Nos. 7, 9, and 11 and Request for Production No. 18 seek "information relevant to [General Fire's] contingent commission and steering claims. Moreover, the information may disclose conflicts which are germane to [General Fire's] breach of fiduciary duty claims." *Memorandum in Support of Plaintiffs' Superseding Motion to Compel*, p. 5 (Docket No. 99-3).  Specifically, Plaintiffs seek information to "explore the relationships between [General Fire's] reinsurers and [Guy Carpenter] and/or its affiliates . . . in order to determine the existence of undisclosed incentives or other conflicts of interest which induced [Guy Carpenter] to steer [General Fire's] reinsurance business to such reinsurers in breach of [Guy Carpenter's] fiduciary duties to [General Fire]." *Id.*

Guy Carpenter admits that it received contingent commissions from one such reinsurer, AXIS Specialty Bermuda. *Guy Carpenter's Answer to Third Amended Complaint*, ¶ 49 (Docket No. 61).  Guy Carpenter asserts that this is "the *only* agreement with any of General Fire's reinsurers that ever earned any so-called 'contingent commission' or 'other payments' for Guy

**ORDER - 9**

Carpenter related to any of General Fire's placements." *Guy Carpenter's Response to Plaintiffs'*

*Superseding Motion to Compel,* p. 2 (Docket No. 104). Guy Carpenter further asserts that it has

provided Plaintiffs "with all documents and information relevant to any of the 'contingent

commissions' or 'other payments' received by Guy Carpenter for any placements related to

General Fire." *Id.*

Guy Carpenter also objects to the relevancy of the requests to the extent they seek

information about Guy Carpenter's investment interests in the companies with whom Guy

Carpenter placed General Fire's insurance business. Guy Carpenter contends that such

information is not relevant to the instant lawsuit and is not reasonably calculated to lead to the

discovery of admissible evidence.

    **1.**    **Interrogatory No. 7**

> INTERROGATORY NO. 7: Identify each reinsurer with which
> you placed reinsurance on behalf of [General Fire] and in which, at
> the time of such placement, Defendant or its parent company,
> Marsh & McLennan, had any investment interest, direct or indirect,
> including in your answer the nature, amount and percentage of that
> investment interest. For the purpose of these Interrogatories,
> "investment interest" shall include, without limitation, any interest
> by way of a surplus note, as well as stock and any other equity
> interest.
>
> Response: Guy Carpenter objects to this interrogatory because it
> seeks information that is irrelevant to any of the claims or defenses
> in this action and is both inadmissible and not reasonably
> calculated to lead to the discovery of admissible evidence.

*Ex. 2 to the First Riley Affidavit* (Docket No. 74-3).

Although the information sought through Interrogatory No. 7 is not directly relevant to

the current allegations in the Third Amended Complaint and Demand for Jury Trial, the request

**ORDER - 10**

is reasonably calculated to lead to the discovery of admissible evidence.  Any evidence or

information that Guy Carpenter steered General Fire's business to certain reinsurers based on its

investment interests or its parent company's investment interests in those reinsurers could

provide further support for Plaintiffs' breach of fiduciary duty claim.  Therefore, Guy Carpenter

shall respond to Interrogatory No. 7 to the extent Guy Carpenter has such information within its

custody and control.

     **2.**     **Interrogatory No. 9**

> INTERROGATORY NO. 9: Identify each reinsurer with which
> you placed reinsurance on behalf of [General Fire] and in which, at
> the time of such placement, Defendant or its parent company,
> Marsh & McLennan, had a contractual relationship other than an
> investment interest, including a description of the nature of that
> interest.

> Response: Guy Carpenter objects to this interrogatory, because, to
> the extent that it seeks information unrelated to contingent
> commissions, market service agreements, or placement-service
> agreements, it seeks information that is irrelevant to any of the
> claims or defenses in this action, and is both inadmissible and not
> reasonably calculated to lead to the discovery of admissible
> evidence.  To the extent this interrogatory seeks information
> related to contingent commissions, market-service agreements, or
> placement-service agreements, please refer to Guy Carpenter's
> responses and objections to the interrogatories and requests asking
> directly about these issues.

*Ex. 2 to the First Riley Affidavit* (Docket No. 74-3).

The term "contractual relationship" is vague and covers a range and variety of

relationships not relevant to the instant lawsuit and not reasonably calculated to lead to the

discovery of admissible evidence.  Therefore, Plaintiffs' Superseding Motion to Compel to the

extent it relates to Interrogatory No. 9 is denied.

**ORDER - 11**

3.    **Interrogatory No. 11**

INTERROGATORY NO. 11: State the date on which Marsh &
McLennan, through any subsidiary and/or other affiliate, first
acquired any shares or other equity interest, directly or indirectly,
in each of the following entities, identifying the direct owner and
the nature and amount of that interest during the period from
January 1, 2004 to the present:

a) James River Group
b) AXIS Specialty LLC
c) Axis Specialty Bermuda

Response: Guy Carpenter objects to this interrogatory because it
seeks information that is irrelevant to any of the claims or defenses
in this action and is both inadmissible and not reasonably
calculated to lead to the discovery of admissible evidence.

*Ex. 2 to the First Riley Affidavit* (Docket No. 74-3).

For the same reasons set forth in discussion of Interrogatory No. 7, Guy Carpenter shall

respond to Interrogatory No. 11 to the extent Guy Carpenter has such information within its

custody and control.

4.    **Request for Production No. 18**

REQUEST FOR PRODUCTION NO. 18: All documents made
available by Defendant, or by any of its direct or indirect affiliates,
to the New York Attorney General ("NYAG") or the New York
Insurance Commissioner in connection with the NYAG
investigation of contingent commissions or bid rigging
arrangements between Guy Carpenter or any of its affiliates
(including, without limitation, Marsh & McLennan, MMC Capital
or any direct or indirect subsidiary of either of them) and any
reinsurer with which you placed reinsurance contracts on behalf of
[General Fire] at any time since January 1, 1999.

Response: Guy Carpenter objects to the request as overly broad
because it seeks all documents related to General Fire's reinsurers
that were produced to the New York Attorney General, and the
mere fact of production in another proceeding does not make them

**ORDER - 12**

> relevant to any of the claims or defenses in this lawsuit.  Without
> waiving this objection, please refer to the response to Request No.
> 12.

*Ex. 2 to the First Riley Affidavit* (Docket No. 74-3).  Guy Carpenter's Response to Request No.

12 limits Guy Carpenter's response to "documents related to contingent commissions earned by

Guy Carpenter and related to placements involving General Fire." *Id.*

Guy Carpenter must produce all responsive documents that Guy Carpenter made

available to NYAG or the New York Insurance Commission.  In addition, Guy Carpenter must

produce any responsive documents made available to NYAG or the New York Insurance

Commission by any of Guy Carpenter's "direct or indirect affiliates," provided that such

documents are or have been within Guy Carpenter's custody and control.  Such information may

be reasonably calculated to lead to the discovery of admissible evidence.

### B.    Discovery Requests Relating to Finite Contracts and Risk Transfer Issues

Plaintiffs contend that Requests for Production No. 47; Interrogatory Nos. 18 and 19; and

Requests for Production Nos. 19, 25, and 26 relate to Plaintiffs' Risk Transfer Allegations.

According to Plaintiffs, Guy Carpenter knew or should have known that the 'finite' features of

certain reinsurance contracts could disqualify the contracts from reinsurance accounting and Guy

Carpenter either failed to test for the sufficiency of the risk transfer in these contracts or failed to

warn General Fire of the accounting consequences if the contracts failed to qualify for

reinsurance accounting treatment.  *Memorandum in Support of Plaintiffs' Superseding Motion to

Compel*, p. 8 (Docket No. 99-3).

In general, Guy Carpenter objects to these discovery requests on relevancy and

burdensomeness grounds.  In terms of relevancy, Guy Carpenter argues that any standards or

**ORDER - 13**

procedures regarding risk transfer or analyzing the sufficiency of risk transfer that were developed by Guy Carpenter after the Gen Re and Hannover Re contract placements are irrelevant to the instant lawsuit. *Guy Carpenter's Response to Plaintiffs' Superseding Motion to Compel*, p. 7 (Docket No. 104). According to Guy Carpenter, "the standard of care during the relevant placements is squarely at issue." *Id.*

For the purpose of resolving the pending discovery motions, the Court does not agree with Guy Carpenter's pre-placement versus post-placement distinction. In general, a professional has a duty to exercise the ordinary skill of his profession. *See Stephens v. Stearns*, 106 Idaho 249, 255, 678 P.2d 41, 47 (1985) (holding "[a]n architect may be liable for negligence in failing to exercise the ordinary skill of his profession"). As Guy Carpenter states, these standards will be defined as of the time of the negligent act. *Guy Carpenter's Response to Plaintiffs' Superseding Motion to Compel*, p. 8 (citing *Heinrich v. Sweet*, 308 F.3d 48, 63 (1st Cir. 2002), *cert. denied*, 539 U.S. 914 (2003)). However, the standards established by Guy Carpenter at the time of the negligent act do not necessarily establish or define the scope of the professional standard of care, as the professional standard of care is an industry- or profession-wide concept. *See Stephens v. Stearns*, 106 Idaho at 255, 678 P.2d at 47. Accordingly, even if post-placement standards developed by Guy Carpenter are not relevant to or admissible in the instant lawsuit, the new standards certainly could lead to the discovery of admissible evidence including evidence or information related to the appropriate, industry-wide professional standard of care.

      **1.**      **Request for Production No. 47**

> REQUEST FOR PRODUCTION NO. 47: All documents produced in response, or otherwise relating to the response, to any subpoena issued to your parent company, Marsh & McLennan, by or on behalf of the Securities and Exchange Commission, any state

securities regulatory authority, the New York Attorney General, the New York Superintendent of Insurance, the Illinois Insurance Department or any other state insurance regulatory authority, requiring production of information and/or documents concerning "nontraditional" or "finite" reinsurance contracts or "loss mitigation" products, including (without limitation) documents which, for purposes of your response to any such subpoena, define "nontraditional" or "finite" or constitutes a "loss mitigation" product and should be identified in response to such subpoena; or identify any criteria to be used in selecting reinsurance contracts for disclosure in response to such subpoena.

Response: Guy Carpenter objects to this request because it seeks documents that are irrelevant to this lawsuit and will be both inadmissible and not reasonably calculated to lead to the discovery of admissible evidence. Guy Carpenter objects to the request as overly broad because it seeks documents related to reinsurance agreements involving clients other than General Fire.

*Ex. 2 to the First Riley Affidavit* (Docket No. 74-3).

In response to Guy Carpenter's overbreadth objection, General Fire offered to limit Request for Production No. 47 to: (1) subpoenas issued by the SEC, New York Attorney General and any other regulatory body with respect to "nontraditional" or "finite" contracts or other contracts containing "loss limiting" or "loss mitigation" features, and (2) nonprivileged documents that (a) specify reinsurance contract terms, conditions, or other features which may indicate that a reinsurance contract is "nontraditional" or "finite" or constitutes a "loss mitigation" product and should be identified in response to such subpoena or (b) identify any criteria to be used in selecting reinsurance contracts for disclosure in response to such subpoena, including documents specifying the criteria by which Guy Carpenter determined that the Hannover contracts are responsive to the subpoenas. *Memorandum in Support of Plaintiffs' Superseding Motion to Compel*, p. 8 (Docket No. 99-3).

**ORDER - 15**

Guy Carpenter appears to have rejected the suggested change. *Id.* Guy Carpenter

contends that the types of contracts that meet the definitions of "finite" or "nontraditional" are far

broader in scope than the contracts at issue in the instant case. *Guy Carpenter's Response to*

*Plaintiffs' Superseding Motion to Compel*, p. 6 (Docket No. 104). Guy Carpenter states

"[P]laintiffs' only claims pertain to the narrow issue of the sufficiency of risk transfer under

applicable accounting rules." *Id.*

Guy Carpenter shall respond to the limited request set forth above to the extent it has such

documents in its custody or control. Such information is, if not directly relevant to the risk

transfer allegations in the Third Amended Complaint and Demand for Jury Trial, is reasonably

calculated to lead to the discovery of admissible evidence.

### 2.    Interrogatory Nos. 18 and 19

> INTERROGATORY NO. 18: Between 1999 to the present, has
> Guy Carpenter ever had a policy or practice relevant to analyzing
> contracts or treaties to determine if the contract or treaty transferred
> sufficient risk to constitute reinsurance? If yes, describe the policy
> or practice, including but not limited to the circumstances that
> would trigger an analysis; any standards used to determine whether
> sufficient risk was transferred to constitute reinsurance; and
> identify the person(s) or entity(ies) responsible for performing the
> analysis.
>
> Response: Guy Carpenter objects to this interrogatory to the extent
> that it asks for any policy or practice developed after Guy
> Carpenter placed the Hannover Re treaty at issue in this lawsuit in
> January 2003 and January 2004 because this information would be
> irrelevant, inadmissible, and not reasonably calculated to lead to
> the discovery of admissible evidence. Without waiving this
> objection, there was no policy or practice during any time relevant
> to this lawsuit regarding a determination about how a cedent
> should account for a reinsurance treaty because this determination

ORDER - 16

is properly made only by the cedent's accountant, not its
reinsurance intermediary.

INTERROGATORY NO. 19:  Between 1999 to the present, has
Guy Carpenter ever analyzed any contract or treaty to determine if
the contract or treaty transferred sufficient risk to constitute
reinsurance?  If yes, state the following for each such analysis
performed: identify the contract or treaty; the results or conclusions
of the analysis; the standards used in the analysis to determine if
sufficient risk was transferred; the circumstances that triggered that
analysis; and the person(s) or entity(ies) who performed the
analysis.

Response:  Guy Carpenter objects to this request for information
about treaties and contracts involving other insurers because this
information would be irrelevant, inadmissible, and not reasonably
calculated to lead to the discovery of admissible evidence.
Furthermore, the request for information regarding other insurers is
unduly burdensome, requiring Guy Carpenter to perform a
nationwide search of thousands of clients' files and only to find
information wholly unrelated to either General Fire or the
Hannover Re Contract at issue in this lawsuit.

*Ex. 2 to the First Riley Affidavit* (Docket No. 74-3).

On January 29, 2007, Guy Carpenter supplemented these responses with an explanation

of Guy Carpenter's procedures and practices in evaluating risk-transfer.  *See Guy Carpenter's*

*Supplemental Discovery Responses* (Docket No. 104-3).

Interrogatory No. 19, as drafted, is too broad and the appropriate avenue for securing the

information sought is Interrogatory No. 18.  In addition, Guy Carpenter's Supplemental Response

is responsive to Interrogatory No. 18.  Nonetheless, to the extent Guy Carpenter's response was

limited in any way to pre-placement procedures, Guy Carpenter shall supplement its response

with post-placement information.

**ORDER - 17**

3.      **Request for Production No. 19**

REQUEST FOR PRODUCTION NO. 19:  All internal policies, procedure manuals, best practice standards manuals, contract drafting manuals, forms contracts maintained at repository or facility maintained by Defendant or one of its affiliates that were or could have been utilized in any manner as a form for the drafting of any of the contract provisions at issue in this case, client or broker educational materials and/or broker training materials prepared by or used by Guy Carpenter at any time since January 1, 1999 to and including the present, relating to reinstatement provisions, evaluation or testing of risk transfer or accounting treatment in connection with reinsurance contracts.  This request includes (without limitation) materials: (i) relating to best practices in the placement and documentation of reinsurance business, (ii) specifying triggering criteria and/or procedures for formal contract review by legal, accounting and/or actuarial personnel (including, without limitation, contract technical specialists or Instrat division personnel); (iii) relating to determination of the number, amount, pricing or financial effects of reinstatements; (iv) specifying the training or experience required of any broker to act as reinsurance intermediary in the recommendation or placement of any "finite" reinsurance contract; (v) defining "finite" reinsurance contracts; (vi) specifying reinsurance contract terms; conditions or other features which may indicate that a reinsurance contract is "finite"; (vii) identifying any criteria to be used in choosing which reinsurance agreements will be tested for risk transfer, the risk transfer tests to be applied, or the thresholds to be used in determining whether or not a reinsurance agreement meets the requirements for reinsurance accounting; (ix) specifying procedures to assure that the ceding insurer meets applicable regulatory limitations on retained risk; and/or (x) specifying file documentation of risk transfer.

Response: Guy Carpenter object to the request for all "internal policies" and "forms of contracts" because the request is too vague to permit a response (or, taken literally to mean all documents reciting all policies within Guy Carpenter or related to any contract "form," the request is overly broad and unduly burdensome).  Guy Carpenter objects to the request to the extent that it seeks "procedure manuals, best practice standards manuals, contract drafting manuals" or "broker training materials" that were neither used nor available at Guy Carpenter's offices in Seattle, Washington during the placement of General Fire's reinsurance

**ORDER - 18**

program because the request is overly broad, unduly burdensome, and seeks documents that are irrelevant and will be inadmissible and not reasonably calculated to lead to the discovery of admissible evidence. Guy Carpenter objects to the request for any "client…educational materials" to the extent that it seeks documents unrelated to General Fire because the request is overly broad, unduly burdensome, and such documents are irrelevant, will be inadmissible, and are not reasonably calculated to lead to the discovery of admissible evidence. Guy Carpenter objects to the request for all of the subcategories of documents after the request for all Materials not otherwise related to the documents already identified in the first part of the request because the request for "materials" is too vague and, read broadly, is overly broad, unduly burdensome, and seeks documents that are irrelevant, inadmissible, and not reasonably calculated to lead to the discovery of admissible evidence. Guy Carpenter object to the request as overly broad, irrelevant, and not reasonably calculated to lead to the discovery of admissible evidence to the extent that the request seeks those portions of Guy Carpenter's proprietary manuals (and the trade secrets therein) that are unrelated to any of the issues in this lawsuit. Without waiving these objections, Guy Carpenter is producing the portion of its Uniform Articles Manual related to drafting reinstatement provisions. Additionally, many responsive documents have already been produced by Guy Carpenter in response to initial disclosures under Rule 26(a)(1)(B).

*Ex. 2 to the First Riley Affidavit* (Docket No. 74-3).

Request for Production No. 19 is not too vague to permit a response. In addition, the materials sought should not be limited to those used at the Seattle, Washington office of Guy Carpenter. Moreover, to the extent the request seeks proprietary information, the parties have a Confidentiality Agreement addresses such concerns and protects such interests. Therefore, Guy Carpenter is ordered to produce all documents within its custody or control that are responsive to Request for Production No. 19.

In addition, Plaintiffs' specific request regarding a February 2003 professional standards manual will be addressed. *Memorandum in Support of Plaintiffs' Superseding Motion to*

**ORDER - 19**

*Compel*, p. 13 (Docket No. 99-3). Plaintiffs contend that this manual addresses the reinsurance

process, including a core standards checklist, and Guy Carpenter has refused to supply the

manual because it does not specifically address reinstatements or finite reinsurance. *Id.* After

careful review of the record, Guy Carpenter's limited view is not persuasive. The February 2003

professional standards manual, at the least, could lead to the discovery of admissible evidence,

and, therefore, must be produced in its entirety.

### 4.    Request for Production Nos. 25 and 26

REQUEST FOR PRODUCTION NO. 25: All documents relevant
to any testing or analysis performed by Guy Carpenter or its
affiliates between 1999 to the present to determine whether a treaty
or contract transferred sufficient risk to constitute reinsurance.
This request includes but is not limited to correspondence;
analyses; policies; training manuals or materials; memoranda;
notes; standards for testing; conclusions; drafts of any of the
foregoing; etc.

Response: Guy Carpenter objects to the request to the extent it
seeks documents related to reinsurance contracts not involving
General Fire because all such documents would be irrelevant and
both inadmissable and not reasonably calculated to lead to the
discovery of admissible evidence. Additionally, the request is
overly broad because producing documents unrelated to General
Fire would require a worldwide search of all Guy Carpenter's
thousands of clients' files relating to years or even decades ago and
only to produce documents not even related to General Fire or any
of the claims or defenses in this lawsuit.

REQUEST FOR PRODUCTION NO. 26: All documents
concerning whether contracts or treaties transfer sufficient risk to
constitute reinsurance. This request includes but is not limited to
treatises; articles; research; correspondence; analyses; policies;
training manuals or materials; memoranda; notes; standards for
testing; conclusions; drafts of any of the foregoing, etc.

Response:  Guy Carpenter objects to this request to the extent that it seeks documents unrelated to the Gen Re Contract, the Hannover Re Contract, or any of General Fire's other reinsurance agreements because these documents would be irrelevant and both inadmissible and not reasonably calculated to lead to the discovery of admissible evidence.  Guy Carpenter objects to this request to the extent it seeks documents properly discoverable only under the scheduling order and Rule 26.  Subject to these objections, these documents have already been produced as part of Guy Carpenter's response to initial disclosures under rule 26(a)(1)(B).

*Ex. 2 to the First Riley Affidavit* (Docket No. 74-3).

Requests for Production Nos. 25 and 26, as drafted, are too broad and burdensome to warrant a response.  Therefore, Plaintiffs' Superseding Motion to Compel is denied with regard to Requests for Production No. 25 and 26.

###### 5.     Request for Production No. 31

REQUEST FOR PRODUCTION NO. 31:  All reinstatement contracts which (i) were placed by Guy Carpenter for any other client, (ii) covered any period between January 1, 2000 and December 31, 2004 and (iii) included either (a) a reinstatement provision and/or (b) a loss carry forward or deficit carry forward provision related to determination of the amount of reinsurance premium due under the contract.

Response: Guy Carpenter objects to this request because the request for documents related to "any other client" necessarily means that the request seeks documents that are irrelevant to this lawsuit (with General Fire as the only relevant client) and will be both inadmissible and not reasonably calculated to lead to the discovery of admissible evidence.  Guy Carpenter objects to the request because it is unduly burdensome, requiring Guy Carpenter to search worldwide through thousands of clients' files and only for contracts not even at issue in this lawsuit.  Guy Carpenter objects to this request because a full response would necessarily require disclosure of Guy Carpenter's clients' trade secrets and other confidential, private information.

*Ex. 2 to the First Riley Affidavit* (Docket No. 74-3).

ORDER - 21

General Fire has agreed to limit this request to contracts placed by Guy Carpenter's Seattle office during the relevant time period, 1999-2004. However, General Fire argues that responding to the request should not be unduly burdensome because Guy Carpenter has already identified reinsurance contracts that contain loss limiting features or can be identified as "finite" in response to subpoenas from the SEC and New York Attorney General. *Plaintiffs' Memorandum in Support of Superseding Motion to Compel*, p. 16 (Docket No. 99-3).

Guy Carpenter argues that the request for every reinsurance agreement with a loss carry forward or deficit carry forward is overly broad and burdensome. *Guy Carpenter's Response to Plaintiffs' Superseding Motion to Compel*, p. 14 (Docket No. 104). Guy Carpenter contends that these contracts are irrelevant to the current lawsuit. *Id.* In addition, Guy Carpenter describes that it would have to comb through hundreds of thousands of hard copy documents in order to find those clients' contracts that have the described provisions. *Id.*

Request for Production No. 31 is too broad and would impose an unreasonable burden upon Guy Carpenter. The documents sought are not relevant and the request is not reasonably calculated to lead to the discovery of admissible evidence. Therefore, Plaintiffs' Superseding Motion to Compel with regard to Request for Production No. 31 is denied.

### C. Discovery Requests Relating to Broker Duties and Training

Plaintiffs contend that Request for Production Nos. 9 and 20 relate to broker training and duties. Plaintiffs are seeking information regarding applicable standards for broker conduct and the scope of duty brokers assume. *Memorandum in Support of Plaintiffs' Superseding motion to Compel*, p. 17 (Docket No. 99-3). Guy Carpenter objects to the requests on the basis of relevancy and burdensomeness.

ORDER - 22

1.    **Request for Production No. 9**

REQUEST FOR PRODUCTION NO. 9:  All documents relevant
to duties owed by [Guy Carpenter] to its clients such as [General
Fire], including but not limited to duties referenced in paragraphs
19, 52, 58, and 67 of your Answer.  This request includes but is not
limited to any communications, discussions, or policies identifying,
describing or discussing [Guy Carpenter's] duties to its clients as
set forth in advertisements; policy manuals; training manuals or
materials; correspondence; memoranda, etc.

Response:  [Guy Carpenter] object [sic] to this request because any
duties to other clients are irrelevant to any duties owed to General
Fire (and [Guy Carpenter] owed no duties at all to GF&C, and
entity [sic] that has never been a client of [Guy Carpenter]).  [Guy
Carpenter] objects to this request as unduly burdensome because it
would require a worldwide search for all advertisements, policy
manuals, training manuals or materials, correspondence, and
memoranda in every one of [Guy Carpenter's] thousands of clients'
files and for an unlimited number or years or decades.

*Ex. 2 to the First Riley Affidavit* (Docket No. 74-3).

General Fire has offered to limit this response with regard to time and to confine the

scope to the Seattle office and any nation-wide policies, procedures, and practices.  *Plaintiffs'*

*Memorandum in Support of Superseding Motion to Compel*, p. 17 (Docket No. 99-3).  Guy

Carpenter has not changed its objections based on the proposed limitation.

Request for Production No. 9, even as limited by General Fire, is not reasonable.  The

information sought would be inadmissible on relevancy grounds and is not reasonably calculated

to lead to the discovery of admissible evidence.  Therefore, Plaintiffs' Superseding Motion to

Compel with regard to Request for Production No. 9 is denied.

**ORDER - 23**

2.     **Request for Production No. 20**

REQUEST FOR PRODUCTION NO. 20:  All internal policies, procedural manuals, educational and/or broker training materials prepared or used by [Guy Carpenter] at any time since January 1, 1999 to and including the present, relating to the functions or duties of a reinsurance broker, contract drafting specialist, actuary or other personnel employed by Defendant in connection with the design, drafting, determination of number or amount or pricing or financial effects of reinstatement provisions, risk transfer testing, or placement of reinsurance contracts on behalf of insurance company clients.

Response: Please refer to Guy Carpenter's response to the preceding request.[5]

*Ex 2 to the First Riley Affidavit* (Docket No. 74-3).

General Fire has offered to limit this request to: (1) broker training materials prepared or used by Guy Carpenter and related to reinstatement provisions, evaluation or testing of risk transfer or accounting treatment for reinsurance contracts; (2) internal policies, procedural manuals, educational and/or broker training materials prepared or used by Guy Carpenter relating to the functions or duties of a reinsurance broker, contract drafting specialist, actuary or other personnel involved in the design, drafting, or placement of reinsurance contracts; and (3) the training or experience required of any broker to act as reinsurance intermediary in the recommendation or placement of any finite reinsurance contract. *See Memorandum in Support of Superseding Motion to Compel*, p. 18 (Docket No. 99-3).

Guy Carpenter shall produce any broker training materials specific to reinstatement, the evaluation or testing of risk transfer, or accounting treatment for reinsurance contracts.  In addition, Guy Carpenter shall produce any job descriptions or other similar documents developed

---

[5]  Guy Carpenter's objections to Request for Production No. 19 are recited, *supra*, pp. 17-18.

ORDER - 24

for the reinsurance broker, contract drafting specialist, and actuary positions specifically identified in Request for Production No. 20.

### D.     Making Employees Available for Deposition

General Fire asserts that Guy Carpenter has refused to produce witnesses until two weeks after the discovery issues are resolved. *Memorandum in Support of Plaintiffs' Superseding Motion to Compel*, p. 16.  (Docket No. 99-3).  General Fire requests that the Court order Guy Carpenter to make its employees available for deposition in the period from March 1, 2007 to May 4, 2007, set forth in the Court's most recent scheduling order (Docket No. 88) even if Guy Carpenter has not completed its document production. *Id.*

Guy Carpenter shall supplement its discovery responses, including document discovery, consistent with this order within fourteen (14) days of issuance, and, as discussed during the hearing earlier this week, the dates for depositions shall be moved to the period between March 15, 2007 until May 18, 2007 unless otherwise agreed by the parties.  This schedule will allow the parties to move forward with depositions and avoid the risk that any deponents will be deposed on more than one occasion.

### E.     Attorneys Fees

Because Plaintiffs' Superseding Motion to Compel is granted in part and denied in part, an award of attorneys fees to either party is not required at this time.

**ORDER - 25**

## IV.

## ORDER

THEREFORE IT IS HEREBY ORDERED as follows:

(1) Defendant's Motion to Amend (docket No. 76) is GRANTED; and

(2) Plaintiffs' Superseding Motion to Compel (Docket No. 99) is GRANTED in part and DENIED in part as provided in this Order and Defendant shall supplement its discovery responses within fourteen (14) days.

DATED: **March 2, 2007**.

Honorable Larry M. Boyle
Chief U. S. Magistrate Judge

**ORDER - 26**